171 So.2d 804 (1965)
Earl NORMAND et al., Plaintiffs and Appellees,
v.
AMERICAN HOME ASSURANCE COMPANY, Defendant and Appellant.
No. 1356.
Court of Appeal of Louisiana. Third Circuit.
February 10, 1965.
Rehearing Denied March 3, 1965.
Writ Refused April 15, 1965.
*805 Gold, Hall & Skye, by Leo Gold, Alexandria, for defendant-appellant.
Roy & Roy, by Chris J. Roy, Marksville, for plaintiffs-appellees.
Before FRUGÉ, SAVOY and HOOD, JJ.
HOOD, Judge.
The plaintiffs in this action seek damages for personal injuries allegedly sustained by them as the result of a two-car motor vehicle collision. One of the automobiles involved in the collision was being driven by Jesse Smith and the other was being driven by Clifton Jeansonne. Four of the plaintiffs, Earl Normand, Malcolm Baudin, William Desselles and Anthony Bordelon, were occupants of the Jeansonne automobile at the time of the accident. The remaining plaintiffs, Jesse Smith and William *806 Elbert Reynolds, were occupants of the other car. The sole defendant is American Home Assurance Company, the liability insurer of Jeansonne.
After trial on the merits, judgment was rendered by the trial court in favor of the four plaintiffs who were occupants of the Jeansonne car. Judgment further was rendered rejecting the demands of Smith and Reynolds. The defendant and the two plaintiffs whose demands were rejected have appealed.
The trial judge, in his excellent written reasons for judgment, has accurately stated the pertinent facts, and we accordingly adopt the following statements made by him as our own:
"The accident occurred about 6:45 A.M., on March 6, 1963, North of Red River, in the Parish of Avoyelles, on Louisiana Highway #115, Louisiana 107, hereinafter referred to as La. 115, also known as the Moncla Bridge-Centerpoint-Pineville Highway. It was drizzling and cold; Jeansonne was driving with his lights on, proceeding northerly on the said highway. This road is blacktopped, has two traffic lanes and is about 18 feet wide, exclusive of the shoulders. It is marked with a center white line and is straight for some six or seven hundred feet in either direction from the scene of the accident.
"The accident occurred at or near a `T-Intersection,' formed by the junction of highway La. 115, with another black-topped road leading westerly from La. 115, this other road being known and marked as the Hayes Cemetery Road. This latter road is approximately the same width as La. 115; it has a steel rail cattle guard thereon, about 50 feet from it, junctive with La. 115. It is not a State road, but a Parish road; it leads to a cemetery, a little sawmill, and a small residential area. There are no road markers or signs on La. 115 to warn motorists of this intersection; there are no yellow `no-passing' lines on La. 115 because of this intersection.
"As Jeansonne travelled northerly on La. 115, at about 55 m. p. h., and some two or three hundred feet before he reached the said intersection, he decided to pass another car which was proceeding in the same direction. Perceiving that his left lane was clear of on coming traffic from the opposite direction, he got into his left or passing lane; he blew his horn to give warning of his intention to pass, and as he had about reached a point even or nearly even with the rear end of the car he was passing, Smith drove out from the Hayes Cemetery road and made a right turn on La. 115, immediately in front of Jeansonne, who was still in the passing lane of La. 115. The left front of the Jeansonne car collided with the left front of the Smith car and both vehicles were pretty badly wrecked. Each car came to rest, after the collision, facing different directions from that which they were proceeding, before the wreck. The point of impact, according to the State Trooper who investigated the accident, was in the Southbound traffic lane of La. 115, immediately south of the intersection aforesaid, about where the apron shoulders of the Hayes Cemetery Road come together with the La. 115. The Court accepts this as the correct point of impact. The trooper could discern this by the broken glass, mud, dirt, debris, etc., upon the surface of the highway.

* * * * * *
"A great deal of conflicting testimony was elicited from various witnesses about this hill and defilade three or four hundred feet to the south of the Hayes Cemetery Road intersection, on La. 115. To resolve the conflicting testimony, the Court made a couple of personal inspections of the *807 area, after the conclusion of the trial. This careful observation by the Court shows that as a motorist comes out of the Hayes Cemetery Road to its intersection with La. 115, he can look southward on La. 115, and there is a gradual incline or slope in that direction for at least 300 feet; thence from that point, further south, there is a gradual decline or defilade for about 250 feet more. When an automobile is at the bottom of this last and lowest point, about 550 to 600 feet south of the Hayes Cemetery Road intersection, the motorist coming out of the Hayes Cemetery Road completely loses sight of an automobile, and a pick-up truck, for example, which is a little higher than an automobile, can be seen in part about its top one foot, when it is at the bottom of the draw. However, the Court came to the conclusion, because of the distances involved, that this `hill,' `incline,' or `defilade' was in no way related to the accident and there was no causal relation between the two. In other words, Jeansonne and Smith could have seen each other's car, as Smith came out of the Hayes Cemetery Road, and reached La. 115, for not less than 400 feet. They could have readily seen each other in plenty of time to avoid the accident, had either of them not been negligent."
The evidence also shows that at the time of the accident there was a sign located in the northwest quadrant of that intersection, at or near the western edge of Louisiana 115, on which sign were painted the words, "Hayes Cemetery Road," and an arrow pointing in a westerly direction. This sign consisted of black letters painted on a white background, and it was clearly visible to motorists approaching this intersection from the south.
The trial court concluded: (1) That Jeansonne was negligent in driving his automobile on the left side of the highway when approaching within 100 feet of an intersection, in violation of LSA-R.S. 32:76, and that his actions in doing so constituted negligence per se, proximately causing the accident; (2) that Smith was negligent in driving onto a state highway from a parish or secondary road in the face of oncoming traffic, without yielding the right-of-way to motorists on the preferred thoroughfare, and that his negligence in that respect also was a proximate cause of the accident; and (3) that Reynolds was barred from recovery by his own contributory negligence in failing to protest or to warn Smith of the danger.
Defendant argues that the junction of Louisiana 115 and the Hayes Cemetery Road does not constitute an "intersection," within the meaning of LSA-R.S. 32:76, and that the trial court erred, therefore, in holding that Jeansonne had violated that statutory provision and thus was negligent in driving on the left side of the highway when approaching within one hundred feet of an intersection.
In a number of cases decided by the appellate courts of this state it has been held that under the facts presented in each of those cases the junction of a heavily traveled thoroughfare with a smaller or inferior public road was not an "intersection," within the meaning of LSA-R.S. 32:76. See Crane v. London et al., La. App. 2 Cir., 152 So.2d 631; Sonnier v. Great American Insurance Company et al., La.App. 3 Cir., 134 So.2d 363; Davis v. Southern Farm Bureau Casualty Insurance Company, La.App. 3 Cir., 134 So.2d 366; Babineaux v. Sims, La.App. 1 Cir., 111 So.2d 848; Dukes v. Kirkwood et al., La. App. 1 Cir., 105 So.2d 318; Brown & Williamson Tobacco Corp. v. Baumgardner et al., La.App. 1 Cir., 92 So.2d 107; Nichols v. Everist, La.App. 2 Cir., 80 So.2d 199; King v. Willis, La.App.Orl., 75 So.2d 37; and Dudley v. Surles et al., La.App. 2 Cir., 11 So.2d 70.
In each of the above cited cases the intersection consisted of a hard surfaced state highway on the one hand, and an *808 unmarked gravel or dirt road on the other. In determining whether a junction should be held to be an "intersection," the court in each case considered the facts relating to the nature of that particular crossing, including facts as to the type and width of each road, the absence of highway signs indicating an intersection, the absence of "no passing" lines on the principal thoroughfare, or the appearance of the junction and of the inferior road.
In determining whether a particular junction constitutes an "intersection," as that term is used in LSA-R.S. 32:76, we think it is proper to consider all of the facts and circumstances relating to that junction, including facts as to the character and appearance of the crossing, the width and type of each of the intersecting thoroughfares, and the presence or absence of any signs or markings which would indicate to an approaching motorist that there is an intersection at that point.
In the instant suit both of the intersecting roads were of equal width, both were blacktopped, and a motorist approaching on the preferred highway from the south could clearly see the junction several hundred feet before he reached it. The sign reading "Hayes Cemetery Road," and located at the intersection on the west edge of the state highway, clearly apprised approaching motorists of the fact that there was an intersection at that point. Also, the photographs which appear in the record indicate that the junction and the above-mentioned sign could be seen easily by Jeansonne as he approached. And, finally, we are impressed by the fact that the trial judge personally inspected the intersection on two occasions following the trial, and after doing so he concluded that it should be considered as an intersection, within the meaning of LSA-R.S. 32:76.
In Barras v. Fidelity & Casualty Company of New York, La.App. 3 Cir., 152 So.2d 74, we considered the junction of a parish shell road with a hard surfaced, heavily traveled state highway to be an "intersection," as that term is used in LSA-R.S. 32:233 (now LSA-R.S. 32:76). And in Ulmer v. Travelers Insurance Company, La.App. 1 Cir., 156 So.2d 98, it was held that the junction of a side street with a state highway was an "intersection," within the meaning of that statute. In that case the court pointed out that the speed limit on the highway was 60 miles per hour, that the side street was "quite obscure to vision," that it "was not visibly a very significant street," and that although it "may be somewhat obscure at a distance, it is a blacktopped intersecting street that leads to a residential section and comes squarely under the prohibitory provision as interpreted by a long line of jurisprudence."
We think the intersection involved in the instant suit was more clearly marked and was more obvious to an approaching motorist than were the ones involved in the Barras and Ulmer cases. We note also that Jeansonne testified that he was thoroughly familiar with this road junction and he knew that "a lot of loggers go down that Hayes Cemetery Road to that sawmill," and that they generally do so early in the morning at about the time the accident occurred.
Under the facts and circumstances presented here, we conclude, as did the trial judge, that the junction of Louisiana 115 and the Hayes Cemetery Road is an "intersection," as that term is used in LSA-R.S. 32:76, and that Jeansonne violated that provision of the Revised Statutes by driving on the left side of the highway while approaching within one hundred feet of this intersection.
The above cited statutory provision is a safety measure, designed to protect life and property on the highways. The violation of its provisions by a motorist is negligence per se, and this negligence is actionable if it constitutes a proximate cause of the collision. Dixie Drive-It-Yourself System New Orleans Co., Inc. *809 v. American Beverage Company et al., 242 La. 471, 137 So.2d 298; Bertrand v. Trunkline Gas Co. et al., La.App. 3 Cir., 149 So. 2d 152; Ulmer v. Travelers Insurance Co., supra; Herget et al. v. Saucier et al., 223 La. 938, 67 So.2d 543.
In the instant suit Jeansonne was negligent in violating this statutory safety regulation, and in our opinion his negligence in that respect was a proximate cause of the collision. It follows, therefore, that the defendant, as the insurer of Jeansonne, is responsible in damages to each of the of the plaintiffs up to its policy limits, unless any or all of the plaintiffs are barred from recovery because of contributory negligence.
We agree with the trial judge that plaintiff, Smith, was negligent in entering Louisiana Highway 115 from the inferior parish road directly in front of the oncoming Jeansonne vehicle, and that his negligence in that respect was a proximate cause of the accident. For that reason, we think the trial judge correctly concluded that Smith is barred from recovery because of his contributory negligence.
We are unable to agree with the trial judge, however, that Reynolds a guest passenger in the Smith vehicle, is also barred from recovery because of contributory negligence. Smith and Reynolds both testified, and it is undisputed, that Reynolds warned Smith to "watch out" or to "look out" as soon as he observed the Jeansonne car approaching. Smith did not see the approaching vehicle until after Reynolds had given this warning.
Generally, a guest passenger is not required to keep a constant lookout for the dangers of the highways or to pay attention to the ordinary road or traffic conditions incident to ordinary driving, it being his right and privilege to place reasonable reliance upon the driver in charge of the car for the exercise of ordinary care and caution. However, if the guest passenger becomes aware of a danger ahead which apparently is unknown to the driver, or if he observes that the driver is incapable or otherwise unfit to operate the machine, then a duty devolves upon the guest to give some warning to the driver, or to take some precautionary action. Herget v. Saucier, supra; Vowell v. Manufacturers Casualty Insurance Company, 229 La. 798, 86 So.2d 909.
In this instance, Reynolds, the guest passenger, warned the driver as soon as the danger became apparent to him. We cannot say that the danger was so apparent that he, as a guest passenger, should have observed it and warned the driver sooner. We know of no other precautionary measures he could have taken under the circumstances, and we feel, therefore, that the trial court erred in holding that Reynolds is barred from recovery because of his contributory negligence.
Defendant contends that all of the occupants of the Jeansonne car were engaged in a joint adventure at the time the accident occurred, that the negligence of the insured driver, Jeansonne, is imputable to each of the said occupants, and that the four plaintiffs who were in that car at the time of the accident are barred from recovery by their own contributory negligence.
The trial judge concluded that such a defense is not available to the defendant in this suit, since the insured is alleged to be one of the co-adventurers. He also held that even if such a defense should be available to defendant, the defense is without merit because the parties were not engaged in a joint adventure at the time of the accident.
We agree with the trial judge that the doctrine of joint liability because of joint adventure, or the imputing of negligence of one joint adventurer to the others, has no application in actions between the parties. It can only be applied in actions against third parties. In Lawrason *810 v. Richard, 172 La. 696, 135 So. 29, our Supreme Court held:
"Moreover, the doctrine of joint liability because of joint adventure has no application between the parties but only as concerns third parties, the theory of joint liability being based on supposed agency. And there can be no doubt that a negligent agent is liable to his principal unless the latter be also at fault."
The rule as stated in 65 C.J.S. Negligence § 158, page 799, is:
"Although there is some authority to the contrary, the doctrine of joint enterprise is peculiar to contributory negligence and has no application to actions brought by one joint adventurer against another to recover for injuries due to the latter's negligence."
And in Sumrall v. Aetna Casualty and Surety Co. et al., La.App. 2 Cir., 124 So.2d 168, the above authorities were cited, and the rule therein set out was applied.
Defendant cites and relies on Kay v. Lumbermen's Mutual Casualty Co. et al., La.App. 2 Cir., 158 So.2d 422 (writs refused). One of the issues in that case involved the interpretation of a Texas statute relating to the liability of the operator of a car to a guest passenger, and in resolving that issue it became necessary to determine whether the parties were engaged in a joint adventure at the time of the accident. Our brothers of the Second Circuit concluded that the parties were engaged in a joint adventure, and that for that reason the Texas statute was not applicable. The court further held that the plaintiff, although a co-adventurer with the defendant, was entitled to recover damages from the defendant. We think the Kay case is applicable to the instant suit only insofar as it relates to the question of whether a joint adventure did or did not exist between the parties. In other respects the decision seems to be contrary to defendant's position, since the plaintiff was permitted to recover damages from his co-adventurer.
Since we have concluded that this defense is not available to the defendant in this case, as the insurer of Jeansonne, it is unnecessary for us to consider the question of whether the parties were actually engaged in a joint adventure at the time of the accident.
The injuries sustained by plaintiff, Reynolds, as a result of the accident consisted of contusions of the right shoulder and neck and minor brush burns on the right part of the nose and face. He was treated by a doctor on one occasion, and although he testified that he missed some work as a result of the accident, the evidence fails to support that claim. We think the injuries sustained by him were of a very minor nature, and that an award of $150.00 for his injuries, plus $38.00 for the medical expenses incurred by him, would be fair and adequate.
We note that the awards made to all of the plaintiffs, including that to Reynolds, will exceed the maximum limits of the policy issued by defendant. For that reason it is necessary to amend the judgment appealed from in order that the awards will be within the policy limits.
In our opinion the awards made to plaintiffs, Desselles, Normand and Baudin, are fair and adequate and are consistent with awards made for similar injuries in other cases. We think the award made to Bordelon, however, is somewhat excessive, and for that reason we have decided to reduce the award made to him by an amount which would bring the total awards within the policy limits. According to our figures the award to Bordelon must be reduced to the sum of $888.64.
For the reasons herein assigned the judgment appealed from is reversed insofar as it rejects the demands of Elbert Reynolds, and judgment is hereby rendered in favor of said plaintiff, Elbert Reynolds, and against defendant, American Home Assurance *811 Company, for the sum of $188.00, with legal interest thereon from date of judicial demand until paid. The judgment appealed from further is amended by reducing the award in favor of Anthony Bordelon from $1,026.00 to the sum of $888.64, with legal interest thereon from date of judicial demand until paid. In all other respects the judgment appealed from is affirmed.
The costs of this appeal are assessed to appellants, Jesse Smith and American Home Assurance Company, each being condemned to pay one-half of said costs.
Amended and affirmed.

On application for Rehearing.
En Banc. Rehearing denied.