LOTTINGER, Judge.
This is an action in tort resulting from an automobile collision. The record discloses that the accident occurred on May 27, 1963, at approximately 12:30 A.M. on La. Highway No. 308 in the Parish of La-fourche, at or near Galliano, Louisiana. One of the defendants, Eve Marie Duet, was driving a 1955 Ford automobile owned by Ozemie Duet in a southerly direction on said highway in her right hand lane of traffic. The record indicates that at that same time, Curtis A. Bruce was driving a 1959 Ford automobile owned by one of the petitioners, Joachin E. Bruce, in the same direction but some distance behind the Duet automobile. The testimony of both drivers indicates that the Bruce vehicle had been following the Duet vehicle for quite some time, and that as a matter of fact, they had crossed the bridge across Bayou Lafourche at Galliano and gone from La. Highway No. 1 to La. Highway No. 308 at almost the same time at a distance of about three car lengths apart. About one quarter of a mile south of the Galliano bridge, and at a time when Bruce testified that Miss Duet was driving about 25 or 30 miles an hour, the Bruce vehicle pulled into the left hand lane of traffic and commenced passing the Duet vehicle. At the time that the Bruce vehicle had come almost alongside the Duet vehicle, Miss Duet, who testified that she had by this time slowed down to about 10 miles per hour, turned left into a lane known as Duet Lane, which runs perpendicular to La. Highway No. 308 and runs in an easterly direction from the said highway 308, thus forming a “T” intersection. As Miss Duet had partially completed her turn and when she was partially in the left hand lane of traffic, the left side of her automobile was struck by the right front of the Bruce automobile, which was in the act of passing.
On May 20, 1964, the instant suit was filed by Joachin E. Bruce and United States Fidelity and Guaranty Company, who was, at the time of the accident hereinabove described, the collision insurer of the Bruce vehicle. They named as defendants, Eve Marie Duet, who was, at the time of the accident, driving the automobile belonging to her father, Ozemie Duet, and Reliance Insurance Company, the property damage insurer of the Duet vehicle. The principal allegation of negligence with reference to the defendants contained in the petition was the allegation relative to the defendant, Eve Marie Duet, having made a left hand turn across the highway without first having ascertained that such a maneuver could be safely executed. Prior to the trial, counsel for both parties entered into a joint stipulation wherein they agreed that if the plaintiffs were entitled to judgment, the judgment should be rendered in the amount of *304 $685.00 for United States Fidelity and Guaranty Company and $100.00 for Mr. Brace, this sum representing the deductible stipulated in his collision policy and which was paid by him for the repair of his vehicle.
Prior to filing answers, the defendants filed an exception of no cause of action based upon paragraph 5 of plaintiff’s petition and the provisions of LSA-R.S. 32:76, which provides that no vehicle shall at any time be operated on the left side of the highway when approaching within 100 feet of or traversing any intersection or railroad grade crossing. The exception was founded upon the proposition that paragraph 5 of plaintiff’s petition was an admission on the part of plaintiffs of contributory negligence of the driver of the Bruce vehicle. The paragraph of the petition referred to in the exception is that which described the accident itself, and stated that the collision occurred while the Bruce vehicle was passing the Duet vehicle, and when the Duet vehicle was in the process of executing a left hand turn into Duet Lane. After having been fixed for trial, the exception was argued by counsel for both parties, and the Court overruled the exception. Thereafter, defendant filed an answer to the original petition denying the negligence of the defendant, Eve Marie Duet, and pleading, in the alternative the contributory negligence of Curtis Bruce'in attempting to pass a vehicle within 100 feet of an intersection in contravention of LSA-R.S. 32:76. After a trial on the merits, the District Judge rendered judgment in favor of the plaintiffs and against the defendants in the amount prayed for in the petition and in his written reasons for judgment found that Eve Marie Duet was negligent in executing the left hand turn immediately before the collision.
The District Judge discussed the question of whether or not the driver of the Bruce vehicle was contributorily negligent. He stated, and we believe correctly, that the real crux of the problem with reference to the contributory negligence of Bruce is, was this “T” intersection formed by La. Highway No. 308 and Duet Lane an intersection contemplated by the provisions of LSA-R.S. 32:76. In his reasons for judgment, the District Judge went on to find that this intersection was not an intersection contemplated by the provisions of the statute and therefore rejected defendants’ claim of contributory negligence. After rendition of the judgment, the defendants timely perfected a suspensive appeal. This appeal was answered by the plaintiffs-appellees, wherein they prayed that the judgment of the District Court be affirmed.
Counsel for appellants sets forth in his. brief four separate and distinct assignments-of error. The first is that the Trial Court erred in finding that Curtis Bruce was in noway negligent and was in no way responsible for the collision. In their second assignment of error, appellants urge the statutory negligence of Curtis Bruce and urge error on the part of the Trial Court in finding that the intersection of La. Highway No. 308 and Duet Lane was not an intersection within the meaning of LSA-R.S. 32:76-The third assignment of error is appellants^ contention that the Trial Court erred in finding any negligence whatsoever on the part of Miss Duet. The fourth and final assignment of error is appellants’ contention that the Trial Court was incorrect in. its ruling in excluding from evidence and refusing to consider two photographs introduced by appellant.
With reference to the first and third assignments of error furnished by appellant, that is the negligence vel non of Curtis Bruce and the negligence of Miss Duet, we have examined the transcript of testimony filed in the record and find that the facts, for the most part, are uncontradicted and agreed upon by the drivers of both vehicles. Miss Duet testified that she was coming from the bowling alley and was on her way home, that she knew that she had a car behind her, because she had seen the car when she crossed the Galliano bridge to get from La. Highway No. 1 to La. Highway No. 308. She stated that the car behind her had crossed at the same time so that she knew *305 that he was behind her. She testified that as she approached Duet Lane, she slowed down and applied her brakes, that she put on her turn indicator and that she looked behind her when she started to turn, but it did not look as though the Bruce vehicle was right in back of her. She stated that just before she made the turn, she had slowed down to ten or fifteen miles per hour. Miss Duet testified that when she first noticed the Bruce car following her, that it Was about 3 lengths to the rear of her car.
Curtis Bruce testified that before the accident he had been on La. Highway No. 1, going in a northerly direction, that he turned east onto the Galliano bridge and that he then got behind the Duet vehicle. After having crossed the bridge, he turned south on La. Highway No. 308 and testified that the Duet vehicle was then traveling about 25 or 30 miles per hour. Bruce stated that he followed the Duet vehicle for a short time, then moved into the left lane of traffic, blinked his lights and started to pass. He then testified that when his front bumper was approximately even with the back bumper of the Duet vehicle, that the Duet vehicle suddenly made a sharp left turn, and that the front of his automobile hit the left side of the Duet automobile. He further testified that when he started to pass the Duet vehicle, he was about 150 feet to the rear and said that at no time prior to the collision did he see the blinker signal on the Duet vehicle indicating a left hand turn. His statement is that his speed at the time that he was passing the Duet vehicle was about 35 or 40 miles per hour. Geraldine Cheramie, who was a passenger in the Bruce vehicle, testified that as the Bruce vehicle started to pass the Duet vehicle, that the Duet vehicle made a quick left turn and that she did not see any signals of any sort to indicate that the Duet vehicle was going to turn left. We note that Miss Duet at no time denied the testimony of Mr. Bruce wherein he stated that before commencing to pass the Duet vehicle, he had blinked his lights.
• The testimony of the State Trooper who investigated the accident stated that the physical evidence of the impact was in the left hand or east lane of traffic and that he found a 1955 Ford and a 1959 Ford off the highway on the left lane of traffic. He stated that he had found approximately fifteen feet of skid marks in the east lane of traffic. He examined the vehicles and found the left side of the 1955 Ford and the right front of the 1959 Ford damaged. Without objection by counsel for either party, the Trooper paraphrased the statement which Miss Duet had made to him subsequent to the accident in the following manner:
“according to Miss Duet’s statement, she was making a left turn into the Duet Lane, and did not notice the overtaking vehicle.”
The State Trooper then, again without objection from either counsel, paraphrased the statement made to him by Curtis Bruce following the accident as follows:
“when he noticed the vehicle making a left turn, he applied his brakes, and pulled left to avoid it, but he was a little too close to do so.”
 We believe that the testimony of Curtis Bruce, Miss Duet, the passengers in the Bruce vehicle, and the State Trooper all amply supports the finding of fact by the District Judge that Miss Duet was negligent in executing a left hand turn across a highway without having first ascertained that her path, both ahead and to the rear, was clear to make the turn. We likewise believe that the same testimony indicates that Curtis Bruce was not negligent in the act per se, of passing the Duet vehicle.
Let us now consider the appellants’ fourth assignment of error concerning the propriety of the Court’s ruling in its excluding from evidence two photographs introduced by appellants. Prior to his attempt to introduce the two photographs into evidence, counsel’s verification or authentication of these photographs was limited to a *306 series of questions asked to Miss Duet as to whether or not those photographs correctly depicted the area around Duet Lane and La. Highway No. 308 at the intersection of Duet Lane. When counsel for appellants sought to introduce these photographs into the record, counsel for appel-lees objected by reason of the fact that the usual proper foundation had not been laid for the introduction, and the District Judge sustained that objection. Those photographs are now in the record after having been proffered by counsel for appellants. Counsel cites as authority for his right to place these photographs in the record the case of Launey v. Traders and General Insurance Company, 169 So.2d 757 (1964), a case emulating from the Third Circuit Court of Appeal. In that case, the court held that a photograph of an injured party taken after an accident was admissible into evidence with only an identification of the picture by the person whom the picture depicted. We do not believe that this case can stand as authority for the introduction of these photographs in the instant case. Nothing in the record indicates when these photographs were taken, and this, despite Miss Duet’s identification of them, makes them completely valueless and completely irrelevant to this suit. These photographs may have been taken three years prior to the accident, they may have been taken the day after the accident, or they may have been taken two years after the accident. In the absence of any testimony other than that of Miss Duet, we must hold that the identification and authentication of these photographs adduced by counsel at the time of the trial falls far short of the normal requirements set out by the rules of evidence.
Let us now consider appellants’ second assignment of error: that the Trial Court erred in finding that the intersection of La. Highway No. 308 and Duet Lane was not an intersection within the meaning of LSA-R.S. 32:76. Having disposed of the photographs which were proffered by appellants, we must look to the record herein in order to determine the character and nature of the intersection. The State Trooper who investigated the accident testified that he had not had an opportunity to examine and accurately measure Duet Lane as to its width after tire accident, but that he would approximate its width at 18 to 20 feet at the most. He testified that it was probably just wide enough for two automobiles to pass each other. He stated, on direct examination, that there was no yellow line on La. Highway No. 308, indicating no passing and an intersection, that there was no sign indicating an intersection, nor was there a caution light or any other control present which would indicate to a motorist an intersection at the point where Duet Lane meets La. Highway No. 308. His exact language was:
“As far as I am concerned its no more than a regular driveway. There is no marking to it; there is no caution light; there is no yellow marking on the road; there is no intersection sign. You don’t notice it until you get to it.”
The State Trooper’s testimony indicates that along La. Highway No. 308, from Golden Meadow to northern Galliano there are many of these lanes which run perpendicular to La. Highway No. 308 and Bayou Lafourche, many of which lanes are quite close to each other and all of which are dead-end at the rear, or to the east of La. Highway No. 308. The record indicates that the width of La. Highway No. 308 was approximately 22 feet and that both the State Highway and Duet Lane were blacktopped.
Counsel for appellants argues that the intersection of Duet Lane and State Highway No. 308 was in fact an intersection within the meaning of LSA-R.S. 32:76 and cites the case of Ulmer v. Travelers Insurance Company, La.App., 156 So.2d 98, which was considered by this Court in 1963. The accident which was the subject of the litigation in that case occurred at the intersection of Harding Boulevard and Nottingham Street in the Parish of East Baton Rouge. It was urged by the defendant in *307 that case as a manner of defense that Nottingham Street was ‘not visibly a very significant street”. We said with reference thereto:
“Although Nottingham Street may be somewhat obscure at a distance, it is a blacktopped intersecting street ■ that leads to a residential section and comes squarely under the prohibitory provision as interpreted by a long line of jurisprudence.”
We believe however, that the Ulmer case can be distinguished from this case by the fact that the intersection in that case was in fact an intersection of two streets. We have, in this instance, rather than an intersection between two streets, an intersection between a State highway and one of a large number of narrow lanes, which dead-end at one end, and which form a “T-intersection” with La. Highway No. 308 at the other, and which have no cross streets. We believe that Duet Lane is precisely what the name implies, a lane, and not a street. The Trooper’s testimony relative to the fact that two automobiles might be capable of passing each other on the street to us indicates the nature and character of the lane. It is but one of a number of such lanes in that area whose primary purpose is not to transport a volume of traffic from one portion of the area to another portion of the area in a more or less straight line, but whose purpose is rather to provide a means of vehicular access to houses fronting thereon and built in perpendicular lines to the highway and bayou. We believe this lane to be of limited access and limited use, used primarily and almost exclusively by those persons whose houses abut this lane. Miss Duet was turning into the lane because she lives thereon. We do not believe that a lane of this character can be equated in any manner with a street or road which carries normal traveling traffic from one part of an area to another, and which is crossed by other streets at regular or irregular intervals.
A recent case concerning this same problem decided by the Third Circuit Court of Appeal is the case of Earl Normand et al. v. American Home Assurance Company, 171 So.2d 804 (196S). This case involved a collision which occurred at or near a “T-intersection” formed by the junction of a La. Highway with another blacktopped road leading westerly therefrom. The latter road is approximately the same width as the State Highway and is a Parish road which leads to a cemetery, a small sawmill, and a residential area. The Court’s opinion states that the Parish road was well marked with a sign showing the name of the road painted in black letters on a white background which was placed on the State Highway and which was clearly visible to motorists approaching the intersection. An accident occurred when a vehicle while passing another which was proceeding in the same direction, collided with an automobile which drove out from the Parish Road and made a right turn on to the State Highway immediately in front of the passing vehicle thereby colliding head-on with the passing vehicle on the State Highway. The accident there occurred within 100 feet of the intersection of the Parish Road and the State Highway. In that case, the Court discusses and cites at length, many of the cases decided by the appellate courts of this state which stand for the proposition that the junction of a heavily traveled thoroughfare with a smaller or inferior public road is not an “intersection” within the meaning of LSA-R.S. 32:76. The statement is made that in each case the Courts have considered the facts relating to the nature of the particular crossing, including facts as to the type and width of these roads, the absence of highway signs indicating an intersection, the absence of “no passing” lines on the principal thoroughfare, or the appearance of the junction and of the inferior road.
We agree with our brothers in the Third Circuit that it is proper to consider all of the facts and circumstances relating to a particular junction, including facts as to the character and appearance of the crossing, the width and type of each of the intersecting thoroughfares, and the pres *308 ence or absence of any signs or markings which would indicate to an approaching motorist that there is an intersection at that point. In the Normand case supra, both of these intersecting roads were of equal width, both were blacktopped, and a motorist approaching on the preferred highway from the south could clearly see the junction several hundred feet before he reached it. The sign naming the inferior road and located at the intersection on the State Highway clearly apprised approaching motorists of the fact that there was an intersection at that point. Under the facts found by them, the Third Circuit held that that particular intersection was one which was within the meaning of LSA-R.S. 32:76. The Court therein cites the Ulmer case and states that the intersection involved in the Normand case was more clearly marked and was more obvious to approaching motorists than was the one in the Ulmer case.
Relating the facts in this case to the facts in the Normand case, we find that in the latter, the Parish road and the State Highway were of the same width and that the Parish road let to a cemetery, a small sawmill and a residential area. In the instant case, the roads were not of the same width, the lane being narrower than the State Highway, and the lane led to a dead-end and opened only onto the driveways of the individual houses situated thereon. The intersection in the Normand case was well marked with a sign showing the name of the road which was painted in black letters on a white background and which was placed on the State Highway clearly visible to’motorists approaching the intersection. In the instant case, the State Trooper stated that there was no sign indicating Duet Lane, there were no “no passing” yellow markings on the State Highway, there was no intersection sign, there was no caution light. The same distinction can be made as between the Ulmer case, supra and the instant case. We therefore distinguish the instant case from both the Ulmer case and the Normand case, supra; the principal point of distinction being that the intersection in each of the two cited cases was an intersection between two well marked well known vehicular thoroughfares of equal size, both of which served the purpose of moving intra-city and/or intra-parish traffic, whereas in the instant case, the intersection is one between a State Highway and a dead-end lane, not well marked and only possibly wide enough to support the width of two vehicles side by side, and which lane carried little or no intra-parish traffic but was almost exclusively limited in use to those persons whose houses abutted the said lane.
For the above and foregoing reasons, the judgment of the District Court appealed from is affirmed.
Judgment affirmed.