189 So.2d 20 (1966)
Carl A. HOOVER
v.
John R. WAGNER et al.
No. 6682.
Court of Appeal of Louisiana, First Circuit.
June 13, 1966.
Rehearing Denied July 8, 1966.
Writ Refused October 11, 1966.
*22 Joseph F. Keogh, of Franklin & Keogh, Baton Rouge, for appellant.
Walton J. Barnes, Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.[*]
LANDRY, Judge.
This appeal is by defendant John R. Wagner and his liability insurer, Allstate Insurance Company, from the judgment of the trial court awarding plaintiff, Carl A. Hoover, damages for personal injuries and related medical expense sustained and incurred in an accident which happened while plaintiff was in the act of passing a third vehicle in the vicinity of an intersection. Although the third vehicle was damaged in the collision, the driver thereof is in no way concerned in the present action.
The accident in question occurred in the City of Baton Rouge, at approximately 7:05 A.M., on November 13, 1963, at the junction of Drusilla Lane, a paved two lane highway 24 feet in width, running in a northerly-southerly direction, and Audrey Drive, an improved roadway of lesser but undetermined width, coursing in an easterly-westerly direction, running westerly from Drusilla Lane and forming what amounts to a "T" intersection. Although the record does not so show with certainty, the clear impression from the testimony is to the effect Drusilla Lane is the favored thoroughfare notwithstanding the absence of signs or other tangible evidence of its superiority over Audrey Drive. Plaintiff, proceeding northerly on Drusilla Lane in his Rambler automobile, at a speed of 40 to 45 miles per hour (the lawful limit being 45 miles) was passing a Chevrolet Sedan owned by one Herman Farrar and also being driven northerly along Drusilla Lane. The collision occurred in the left or southbound lane of Drusilla Lane when Wagner, proceeding easterly on Audrey Drive, turned right on Drusilla Lane into the path of plaintiff's northbound vehicle. The precise point of impact and other relevant attending circumstances are somewhat in dispute as will hereinafter appear.
*23 The record discloses that at a distance of 300 feet south of the intersection there is a "knoll" or hill on Drusilla Lane but that from the apex thereof a northbound motorist on Drusilla Lane has a clear, unobstructed view of the intersection with Audrey Drive 300 feet ahead. It further appears that a house is situated 54 feet west of the southwest corner of Audrey Drive consequently a motorist proceeding easterly on Audrey Drive has an unimpeded view to the south while still a distance of 54 feet from Drusilla Lane.
Plaintiff Hoover testified he had been following the Farrar automobile at a distance of approximately 40 feet and at about the same speed as Farrar which he estimated to be between 25 and 30 miles per hour. Upon reaching the top of the knoll 300 feet south of Audrey Drive, he observed the roadway ahead was clear whereupon he accelerated his car to approximately 45 miles per hour, pulled into the left or passing lane and commenced his passing maneuver. Plaintiff further testified that his vehicle was completely in the left or passing lane while still about 20 feet to the rear of Farrar's automobile, at which time he estimated he was still between 200 and 250 feet south of the intersection. He proceeded thusly in the passing lane a distance of approximately 75 feet when he observed defendant's vehicle traveling slowly along Audrey Drive toward the intersection at which time he estimated he was still 175 feet south of the intersection and the front of his vehicle was not quite parallel with the front of the Farrar automobile. When he first observed defendant (at which time defendant had not yet entered the intersection) he took his foot off the accelerator and immediately thereafter realized defendant would not stop whereupon he applied his brakes full force. He approximated his distance from Audrey Drive at 120 feet when he attempted to stop. He further testified that the left side of his vehicle struck the front of the Wagner car with sufficient force to knock his vehicle to the right causing it to collide with the Farrar automobile. In essence, plaintiff testified that at the moment of impact defendant had just commenced his turn and only the front of appellant's automobile was actually in the intersection.
While the record does not show the width of the improved surface of Audrey Drive, the testimony of the witnesses and certain photographs introduced in evidence reveal that the paved portion of Audrey Drive "fans out" at the intersection to provide a greater turning radius for motorists entering Drusilla Lane. In this regard it appears that the "flaring out" of the surface of Audrey Drive commences at about the point where an easterly projection of the south edge of the paved portion of Audrey Drive would intersect the northerly projection of the ditch situated west of the west shoulder of Drusilla Lane at a distance of approximately ten feet west of the western edge of the paved surface of Drusilla Lane.
With the foregoing in mind, it is significant at this stage to state that plaintiff's vehicle left 48 feet of skid marks prior to the impact, entirely in the left or passing lane and practically in a straight line. It is also significant that the point of impact was fixed by the investigation officer, Trooper Robert B. Crown, at a spot two and one-half feet west of the center line of Drusilla Lane and one and one-half feet north of the easterly projection of the south curb line of Audrey Drive, or where the southwest end or tip of the flared surface of Audrey connects with the western edge of the improved portion of Drusilla Lane.
The testimony of defendant Wagner is to the effect that he approached the intersection at a speed of approximately 10 to 15 miles per hour. When he passed the house situated some 50 feet from the corner he glanced to his right and observed the Farrar automobile coming over the hill or knoll to the south. He then looked left, saw no vehicle approaching from that direction and upon reaching the point where the roadway of Audrey Drive "fans out" he stopped his vehicle and again looked to the right *24 at which time he noted the Farrar automobile about 150 to 200 feet away traveling northerly in the northbound lane. He saw no vehicle following the Farrar automobile and then commenced his turn looking down at the pavement in order to follow the curve of the "flare" or "fan" in the pavement. As he completed his turn he again glanced up and, in his own words, saw plaintiff "coming at me." He immediately attempted to cut sharply to his right to take the ditch on the west side of Drusilla Lane but the collision occurred notwithstanding.
Farrar's testimony added little of probative value. He stated he was proceeding at about 25-30 miles per hour unaware of the presence of plaintiff's overtaking vehicle. He observed defendant approaching the intersection at a slow rate of speed. He was alerted to the presence of plaintiff's car upon hearing the initial impact whereupon he glanced into his rear view mirror and observed appellee's vehicle in a spin. Almost simultaneously his own vehicle was struck. He brought his car to a stop on the right side of the highway and went back to render what aid he could.
The principal error ascribed to our learned brother of the trial court by counsel for appellants herein is failure to hold plaintiff guilty of negligence in passing at an intersection and declining to hold such negligence a proximate cause of the accident barring plaintiff's recovery. Alternatively, counsel for defendants contends the damages awarded by the trial court were excessive and should be reduced.
In oral reasons dictated into the record, the learned trial court found that plaintiff commenced his passing maneuver while approximately 300 feet south of the intersection and at a time when there was no oncoming traffic proceeding southerly on Drusilla Lane and no vehicle in sight traveling easterly on Audrey Drive toward the intersection. He also found that while plaintiff was passing the Farrar automobile, defendant was proceeding slowly toward the intersection and, when plaintiff realized defendant would not stop, plaintiff could not regain the northbound lane because of the presence therein of the Farrar car. He likewise believed plaintiff was passing in an intersection but concluded that this circumstance was not a proximate cause of the accident inasmuch as plaintiff was already in the passing lane in the act of overtaking Farrar before defendant commenced his turn onto Drusilla Lane. So finding, our esteemed brother below concluded defendant was solely at fault in driving into the intersection when plaintiff was so near as to make such maneuver imminently dangerous which dereliction he attributed to defendant's failure to note the approach of plaintiff's automobile.
That defendant Wagner was guilty of negligence proximately causing the accident is hardly open to argument. By his own admission he failed to see what he should have seen and in legal contemplation did see, namely, the presence of plaintiff's vehicle. On this score the record is abundantly clear plaintiff's vehicle was in plain sight and should have been observed by a motorist exercising even the slightest degree of care and observation. In stopping before proceeding into the intersection, Wagner performed only half the burden incumbent upon him. It is well settled that to stop at an intersection is insufficient if one does not look and see what is to be seen by a driver exercising reasonable care. Howard v. Insurance Company of North America, La.App., 162 So.2d 165; James v. State Through Bd. of Adm'rs of Charity Hospital of La. at New Orleans, La.App., 154 So.2d 497; Pate v. State Farm Mutual Automobile Insurance Co., La.App., 147 So.2d 766. We unhesitatingly concur in the trial court's determination that defendant Wagner was guilty of negligence proximately causing the accident.
The serious question before us is the alleged negligence of plaintiff reputedly resulting from his violation of LSA-R.S. 32:76, which reads as follows:

*25 "§ 76. Further limitations on passing on the left
A. No vehicle shall at any time be driven to the left side of the highway under the following conditions:
(1) when approaching the crest of a grade or upon a curve in the highway, where the driver's view is obstructed within such distance as to create a hazard in the event another vehicle might approach from the opposite direction;
(2) when approaching within one hundred feet of or traversing any intersection or railroad grade crossing;
(3) when the view is obstructed upon approaching within one hundred feet of any bridge, viaduct, or tunnel.
B. The foregoing limitations shall not apply upon a oneway roadway or a multiple-lane highway. Acts 1962, No. 310, § 1."
In urging our reversal of the trial court herein, counsel for appellants relies primarily upon that line of jurisprudence interpreting the hereinabove cited statute and principally the more recent decision of Normand v. American Home Assurance Company, La.App., 171 So.2d 804 (writs denied 247 La. 677, 173 So.2d 542). In the cited authority, our brethren of the Third Circuit held that a motorist passing another vehicle at an intersection and who collided headon with another automobile which had turned right onto the highway at the intersection, was guilty of negligence proximately causing the accident rendering him liable for injuries received by guest passengers in both colliding vehicles.
On the other hand, council for appellee admonishes affirmation of the trial court's decision citing in support of his position Reinninger v. Delta Fire and Casualty Co., La.App., 106 So.2d 746; Hernandez v. State Farm Mutual Automobile Insurance Co., La.App., 128 So.2d 833; Central Louisiana Electric Company v. Hodges, La.App., 137 So.2d 132; Dickerson v. Lorren, La. App., 45 So.2d 221; Croom v. Pittsburgh Plate Glass Company, La.App., 148 So.2d 123 and Williams v. State Farm Mutual Automobile Insurance Co., La.App., 148 So.2d 126. We have read all of the authorities cited by counsel for appellant and find none to be controlling of the present case. We note that whereas Reinninger v. Delta Fire and Casualty Co.; Hernandez v. State Farm Mutual Automobile Insurance Co.; Central Louisiana Electric Company v. Hodges; Williams v. State Farm Mutual Automobile Insurance Co. and Dickerson v. Lorren, supra, involved intersectional collisions neither case was concerned with one vehicle passing another at an intersection. We note further that Croom v. Pittsburgh Plate Glass Company, supra, involved an accident which occurred when a motorist re-entered the highway from the premises of a commercial establishment adjacent thereto.
Normand v. American Home Assurance Co., relied upon by defendant, while factually similar to the case at bar is not, in our judgment, necessarily controlling.
Conceding our complete accord with the now well established rule that violation of the hereinabove cited statutory prohibition against passing at an intersection constitutes negligence per se, we are nevertheless unaware of any rule to the effect that such violation ipso facto renders the offending driver liable for all injuries which may result therefrom to other parties regardless of the attending circumstances.
It is elementary that negligence is not actionable unless it constitutes a proximate cause of the injury sued upon, Home Gas & Fuel Co. v. Mississippi Tank Co., 246 La. 625, 166 So.2d 252; Bodan v. American Employers' Insurance Company, La.App., 160 So.2d 410, or as stated by the Supreme Court in Dixie Drive It Yourself System New Orleans Co. v. American Beverage Company, et al., 242 La. 471, 137 So.2d 298, unless it amounts to a cause in fact of the accident.
*26 Counsel for defendant contends neither thoroughfare in question enjoyed the right of way since neither had been previously designated as the superior street. On this assumption it is contended defendant had preempted the intersection by entering first. As argued by counsel, the record does in fact indicate that neither street had been expressly declared superior to the other but this circumstance can avail defendant nothing. Since plaintiff was approaching from the right of defendant, plaintiff enjoyed the statutory right of way provided by LSA-R.S. 32:121(B) which states unequivocally that when two motorists simultaneously approach an intersection, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right. Moreover, the record shows Drusilla to be a through traffic artery whereas Audrey Drive, though hard-surfaced, is merely a short residential street running one or two blocks in length. It further appears from defendant's own testimony that he was fully aware of the superiority accorded Drusilla Lane by local custom notwithstanding Drusilla Lane had not been formally decreed the favored thoroughfare. Under the circumstances shown it must be concluded plaintiff had the right of way. LSA-R.S. 32:121(B), Carkuff v. Geophysical Service, La.App., 179 So. 490.
Plaintiff seeks to escape the effect of the prohibition against passing at an intersection by invoking that line of jurisprudence which holds in effect that a junction of a superior street with an intersecting inferior artery, under certain circumstances, will not be considered an "intersection" within the meaning of the term as used in LSA-R.S. 32:76. More precisely counsel for appellant cites and relies upon United States Fidelity and Guaranty Company v. Duet, La.App., 177 So.2d 302, recently decided by this court and Normand v. American Home Assurance Company, La.App., 171 So.2d 804. As stated in the authorities hereinabove quoted and the numerous cases therein cited, whether a junction will be deemed an intersection is dependent upon the circumstances attendant in each case. We note that in the Normand case, supra, the court observed that in most instances wherein a junction of two roads was held not to be an intersection, the cross roads concerned consisted of the meeting of a hard-surfaced state highway and an unmarked dirt or gravel road. As stated in the Normand and Duet cases, supra, each case must be resolved in the light of its own circumstances. In the case before us we are concerned with two hard surfaced streets situated within the limits of the capital city of the state. That Audrey Drive is only two or three blocks in length, forms a "T" intersection with Drusilla Lane and serves merely as access to a residential area is of no moment. It is a hardsurfaced, well defined roadway and may easily be seen by a motorist approaching upon Drusilla Lane. We conclude, therefore, the meeting of the streets in question is an intersection.
Conceding plaintiff's negligence in violating the terms of LSA-R.S. 32:76, as we must, considering such action is negligence per se, Normand v. American Home Assurance Co., La.App., 171 So.2d 804; Nicolle v. Roberts, La.App., 117 So.2d 622, we nevertheless conclude plaintiff is entitled to recover because his negligence was not a proximate cause of the accident as found by the trial court.
The rule of proximate cause appears well stated in Volume 65, C.J.S. Verbo Negligence, from which we quote with approbation the following appearing at § 103, pages 645-647, as follows:
"§ 103. Definition and Nature in General
`Proximate cause' is most often defined as any cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred; but *27 it has been recognized that the various definitions and tests of proximate cause are inadequate to afford a definite and invariable rule whereby a line can be drawn between thoses causes which the law regards as sufficiently proximate and those which are too remote to be the foundation of an action.
`Proximate cause' has proved to be an unsatisfactory and troublesome phrase, difficult to define. Literally, the proximate cause is the cause nearest to the effect produced, but in the law of negligence the term is not confined to its literal meaning; nor is it the same as proximate cause in logic, philosophy, or metaphysics, although it has been said to be akin to what is called an `efficient cause' in logic. A comprehensive definition, and one which is, perhaps, most often stated, is that proximate cause is any cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred, and from which it ought to have been foreseen or reasonably anticipated by a person of ordinary prudence in the exercise of ordinary care that the injury complained of, or some similar injury, would result therefrom as a natural and probable consequence.
More concisely, `proximate cause' has variously been defined as: That which immediately precedes and produces the effect, as distinguished from a remote, mediate, or predisposing cause; that from which the fact might be expected to follow without the concurrence of any unusual circumstance; that without which the accident would not have happened, and from which the injury or a like injury might reasonably have been anticipated; the efficient cause, the one that necessarily sets the other causes in operation; * * *."
Our own jurisprudence accords with the above stated general rule relative to proximate cause inasmuch as it has consistently been held that negligence does not bar one's recovery unless it is a proximate cause of the accident sued upon.
Moreover, it is settled jurisprudence that violation of a prohibitory law, though negligence per se, does not bar recovery unless the negligent action constitutes a proximate cause of the injury. Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298; Strehle v. Giaise, La.App., 46 So.2d 685; Smith v. Texas & Pac. Ry. Co., La.App., 189 So. 316.
It is also the firmly entrenched law of this state that to constitute proximate cause as distinguished from remote cause, the negligent act must be the primary or moving cause of the injury, or that cause which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the accident could not have happened, provided the injury is of a nature reasonably anticipatable or foreseeable as a natural consequence of the wrongful act. Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298; Sumrall v. Aetna Casualty & Surety Company, La.App., 124 So.2d 168; Harvey v. Great American Indemnity Company, La.App., 110 So.2d 595; Ardoin v. Williams, La.App., 108 So.2d 817.
Resolution of the question of proximate cause as relates to a tort action depends in large measure upon the facts and circumstances of each individual case. Penton v. Sears, Roebuck & Co., La.App., 4 So.2d 547.
Applying the foregoing principles to the present matter, we find that plaintiff herein commenced his passing maneuver when he was still approximately 250 feet south of the intersection and after having first determined that there was no oncoming traffic proceeding southerly on *28 Drusilla Lane and no vehicle proceeding easterly toward the intersection on Audrey Drive. Under such circumstances plaintiff had every reason and right to believe that he could complete his passing attempt without endangering or imperiling any other motorist upon the highway. With Farrar proceeding at the relative slow speed of approximately 30 miles per hour, it was entirely reasonable and plausible for plaintiff to assume he could in all probability complete his intended passing maneuver before reaching the prohibited distance of 100 feet from the intersection. Plaintiff's uncontradicted testimony (which we believe confirmed by the physical facts) shows he was practically abreast of the Farrar automobile while still approximately 175 feet from the intersection. Thus we are herein concerned with a situation wherein the passing motorist, traveling at a lawful rate of speed, entered the passing lane when the road ahead was clear of oncoming traffic and the nearest intersection (clearly visible to him) was free of vehicles approaching the junction. We believe that in attempting to pass under such circumstances he acted as any reasonably prudent motorist would. In addition he had a right to assume that any motorist proceeding easterly on Audrey Drive would yield the right of way to northbound traffic traveling along Drusilla Lane. After having committed himself to the passing maneuver under such circumstances, plaintiff was thereafter confronted with a sudden emergency created by the gross negligence of Wagner in proceeding into the intersection admittedly without seeing plaintiff's vehicle which was in plain, unobstructed view, and which most certainly would have been observed by defendant had defendant exercised the vigilance and alertness required of him by law. We conclude the sole proximate cause of the accident in question was Wagner's negligence in his acknowledged diversion of his lookout from the road ahead to watching instead the curve of the paved portion of Audrey Drive while making his turn. Wagner's failure to detect plaintiff's vehicle is attributable solely to his not maintaining a proper lookout which in turn resulted in his proceeding into the intersection when it was patently and manifestly unsafe and dangerous for him to do so. When Wagner proceeded into the intersection plaintiff was indeed trapped and, upon realizing his predicament, reacted as is to be expected of an ordinarily prudent driver. He attempted to stop since stopping was the only evasive measure open to him. He could not swerve to the right because of the presence of the Farrar vehicle, and defendant's vehicle effectively blocked the lane in which plaintiff was traveling.
We agree, however, with illustrious counsel for appellants that the damages awarded by the trial court for pain and suffering are excessive and admit of some reduction.
Plaintiff sustained a serious fracture of the alveolar process of the lower jaw, the record revealing the alveolar process to be the substance or structure which holds the teeth, a small angular laceration of the lower lip and a 2½ to 3 inch laceration of the chin. The damage to the alveolar process necessitated the removal of three teeth, namely, the lower left and the first and second central incisors. In addition appellee sustained traumatic injury or damage to two additional teeth (the tooth on either side of those lost). As a result of his injuries plaintiff was hospitalized for approximately three days during which three teeth were surgically removed and his lacerations sutured. Thereafter plaintiff was seen as an outpatient by a dental surgeon who treated and capped the two damaged teeth and eventually fitted plaintiff with a permanent bridge to replace the three extracted teeth.
The medical testimony reflects that whereas plaintiff's injuries were painful and required the administration of strong narcotics to relieve plaintiff's discomfort the first few days following the accident, *29 his extreme discomfort was of relatively short duration. It also appears plaintiff's condition was aggravated because of swelling which impeded his eating for approximately one week or longer. This latter condition, however, appears to have cleared fairly rapidly and within two or three weeks following the accident plaintiff's eating habits were almost normal. Although plaintiff still complained of some difficulty in eating foods such as apples, meat and corn on the cob, he readily conceded his teeth are presently the source of very little discomfort. With regard to the chin and lip laceration, it is shown that these injuries healed without incident leaving only minimal scarring and slight disfigurement. The expert testimony is to the effect that whereas there is still a 50-50 possibility plaintiff may yet lose the two damaged teeth which so far have been saved, the possibility of such loss diminishes progressively with the passage of time. In this regard plaintiff complains that on occasion these two injured teeth are still the source of occasional discomfort when eating foods which are hard or difficult to chew.
Both plaintiff and defendant have cited numerous cases in support of their respective positions regarding quantum. We have considered each authority and find that most involve awards made many years ago before the decreased purchasing power of the dollar was considered as a factor in allotting damages for personal injuries. We are aware of the considerable discretion vested in trial courts with respect to the award of quantum in personal injury cases as reaffirmed and restated in Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149, but find that in the instant case the award is excessive when compared to awards for similar injuries in other cases. We conclude the proper quantum due appellee is the sum of $4,500.00 and accordingly, reduce the award of the trial court to said sum in full compensation of plaintiff's injuries.
Accordingly, it is ordered, adjudged and decreed the judgment of the trial court awarding plaintiff Carl A. Hoover damages in the sum of $5,500.00 for personal injuries be and the same is hereby amended to reduce said sum to the amount of $4,500.00, and in all other respects the judgment of the lower court is affirmed, at appellant's cost.
Amended and affirmed.
NOTES
[*] Due to the death of ELLIS, J., after argument but before rendition, this opinion is handed down unanimously by LOTTINGER, LANDRY, REID and BAILES, JJ.