160 So.2d 410 (1964)
Alvin L. BODAN et ux., Plaintiffs-Appellants,
v.
AMERICAN EMPLOYERS' INSURANCE COMPANY et al., Defendants-Appellees.
No. 10107.
Court of Appeal of Louisiana, Second Circuit.
January 9, 1964.
Rehearing Denied February 13, 1964.
*411 Hayes, Harkey & Smith, Monroe, for Alvin L. Bodan and Mrs. Eva Lee Gilbert Bodan, plaintiffs-appellants.
Theus, Grisham, Davis, Leigh & Brown, Monroe, Attorneys for American Employers' Ins. Co., defendant-appellee.
Hudson, Potts & Bernstein, Monroe, for American Ins. Co., defendant-appellee.
Before HARDY, AYRES and BOLIN, JJ.
AYRES, Judge.
This is an action in tort wherein plaintiffs, husband and wife, seek to recover damages in compensation of personal injuries sustained in an automobile collision on Forsythe Avenue in the City of Monroe about 1:30 a. m., January 28, 1962, and for reimbursement of medical expenses incurred in the treatment of their injuries. Involved in the accident were a Chevrolet station wagon, owned and operated by Robert C. Bahcall, with whom, and his wife, plaintiffs were riding on the rear seat as guest passengers, and an Oldsmobile, owned and *412 operated by James C. Fortner, who was accompanied by his guest, Mrs. Myrtis A. Pitts. Made defendants were the American Employers' Insurance Company, insurer of the Bahcall motor vehicle, and the American Insurance Company, insurer of the Fortner Oldsmobile.
The accident occurred, as stated, on Forsythe Avenue, a main residential thoroughfaire serving several subdivisions of the City of Monroe. The street, asphalt surfaced, is 20 feet wide. The shoulders were inaccessible due to drainage or other public improvements then under construction. The street, however, was well lighted and dry. There were no unusual atmospheric conditions to affect the motorists' vision or view of traffic on the street. The accident occurred when the Bahcall station wagon struck the rear end of the Fortner Oldsmobile while the latter was stopped or parked in the westbound traffic lane of the Avenue.
This is a companion case to those arising out of the same accident entitled Fortner v. Bahcall et al., 160 So.2d 451, and Pitts v. Bahcall et al., 160 So.2d 400, with which it was consolidated for trial, and which have this day been decided.
In the instant case, negligence constituting a proximate cause of the accident, as charged to Bahcall, consisted of his driving at an excessive and unlawful rate of speed and his failure to maintain a proper lookout or to keep his vehicle under control, and, as charged to Fortner, of his improperly parking or stopping on the street without displaying lights, flares, or other warning devices. Plaintiffs were charged, in the alternative, with contributory negligence.
Bahcall was found negligent in the operation of his vehicle, in driving at an excessive rate of speed of at least 60 m. p. h. in a 35 m. p. h. speed zone and in his failure to keep a lookout or to make proper observation of traffic conditions ahead. While Fortner was found to have been negligent in the parking of his car, it was concluded that such negligence did not constitute a contributing cause or factor in the occurrence of the accident. The court found, however, that plaintiffs assumed the risk of Bahcall's driving and were thus barred from recovery. From a judgment accordingly rejecting their demands, plaintiffs have appealed.
The issues presented for resolution are primarily factual in character. Therefore, a brief review of the facts is deemed appropriate. Fortner and Mrs. Pitts, plaintiffs in the companion cases, on the night immediately preceding the occurrence of the accident, attended a dinner party at the Paragon Restaurant in the City of Monroe. At the conclusion of the party, Fortner, accompanied by Mrs. Pitts, returned his mother to her room at a motel and then proceeded to the home of his guest. After entering and while proceeding west on Forsythe Avenue, the Fortner automobile stalled from the exhaustion of its gasoline supply. As the car was brought to a stop, Fortner steered it as far to the right as possible. Due to work then under construction, he was unable to drive his car to the shoulder or nearer the shoulder than where he stopped. Soon thereafter, one Bob Grossclose stopped and offered aid. At Fortner's request, he departed for a supply of gasoline. Although Grossclose offered to push the Oldsmobile to a church ground some 400 feet distant, Fortner declined the offer because of the likelihood of the infliction of damage to his car and because it was not considered to be in a dangerous position due to the illumination of the street. The headlights were alight on the Fortner car when Grossclose first approached, but, on leaving, Grossclose observed that a change to parking lights had been made. In the meantime, and before the return of Grossclose with the gasoline, and before the arrival of the Bahcall car on the scene, several cars passed without incident.
On the same evening, Bahcall and his wife, together with Mr. and Mrs. Bodan, *413 celebrated the wedding anniversary of the Bodans at the Embers Supper Club on Highway 80. During the evening members of the party, other than Mrs. Bahcall, partook of several cocktails, the number of which could not be definitely ascertained. Bahcall admitted having had one before dinner and two after dinner.
Following the celebration, the return journey to their homes was begun. Bahcall, on entering Forsythe Avenue, 3/10 of a mile from the scene of the accident, brought his vehicle to a virtual stop, if not a complete stop, whereupon he proceeded westerly on Forsythe Avenue and, within the short distance intervening between the intersection and the Fortner car, accelerated his speed to, at last, 60 m. p. h. During the course of this portion of the return journey, Bahcall and his friends were discussing property in the vicinity recently acquired by Bodan.
Mrs. Bahcall, who was seated on the front seat to the right of her husband, saw the Fortner automobile and, upon realizing that it had not been seen by her husband, shouted a warningtoo late, however, to prevent the accident. Bahcall, nevertheless, applied his brakes and skidded his car 78 feet before striking the Oldsmobile. The force of the impact propelled the Oldsmobile 59 feet down the street from its original position. The station wagon continued an additional 14 feet before it stopped.
There was no other traffic in the vicinity on Forsythe Avenue at the time of the accident, nor were there any vehicles parked near Fortner's car. The eastbound traffic lane of Forsythe Avenue was, therefore, free of obstruction and free of traffic. Fortner's automobile was equipped with a wide chrome strip clearly visible from the rear for a distance of at least 400 feet. The street, in that vicinity, was lighted by two 6,000-watt lights.
Under the aforesaid facts there can be no question of Bahcall's negligence. The evidence as to his excessive speed and failure to keep a proper lookout or to make proper observation of the street ahead is convincing of his negligence. This was generally conceded by the parties and was so held by the trial court.
Next of primary concern is the question of Fortner's negligence. The taillights on the Oldsmobile were properly functioning at the time of the accident. Moreover, as found by the trial court, without such lights, the car, due to the street's illumination, would have been clearly visible for a distance of at least 300 feet. Therefore, in view of the fact there were no oncoming traffic lights to obscure or obstruct Bahcall's vision, he should and could, by the exercise of reasonable precaution, have seen the Fortner vehicle in ample time to have taken evasive action and avoided the accident.
Therefore, if Fortner is guilty of negligence, such fault must, of necessity, consist of the mere act of his parking on the street. Plaintiffs so contend, in view of the provisions of LSA-R.S. 32:241, in effect at the time of this accident.
This statute, by its very terms, has no application to the present situation. The accident occurred in a mixed residential and business district of the City of Monroe. The statute has reference to parking on a highway outside of a business or residential district. Steagall v. Houston Fire & Casualty Insurance Co. et al., La.App.3d Cir., 1962, 138 So.2d 433.
Many reasons might be assigned why the provisions of the aforesaid statute were excepted from application in business and residential districts. Such areas are usually better lighted than open highways; lower speed limits are generally prescribed for such areas, as is evidenced by the limit of 35 m. p. h. on the street where the accident presently concerned occurred. The parking of automobiles on roads and streets in business or residential districts is customarily done and may be reasonably expected by other motorists.
*414 Nevertheless, the general rule is that the mere violation of a statute or ordinance does not constitute actionable negligence. In order for the violation of the provisions of a statute or of an ordinance to constitute actionable negligence, such violation must constitute a legal cause of an accident. This was pointed out and emphasized in a case cited by defendants, Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298. Without causal connection between an alleged act of negligence and an accident, no liability exists on the part of the alleged offender. Cone v. Smith et al., La.App.2d Cir., 1954, 76 So.2d 46, 49 (writs denied). This was the conclusion reached by the trial court in the instant suit.
The facts, as they relate to Fortner, are comparable to the facts found in Fernandez v. Hartford Accident & Indemnity Co. et al., La.App.2d Cir., 1954, 76 So.2d 638 (writs denied). In that case, an automobile occupied by four persons, returning from an evening of entertainment, collided with the rear end of a truck parked on Louisville Avenue in the City of Monroe. The area in which the truck was parked was well illuminated. The parking of the truck without compliance with the statutory requirements as to rear lights and flares was held insufficient to constitute actionable negligence, where, by the exercise of reasonable diligence, the driver of the automobile could have timely seen the truck parked in a well-lighted area and could have easily avoided the accident. The accident was held to have been caused solely by the inattention of the driver of the automobile. While we are of the opinion no negligence has been established as against Fortner, his acts, in no event, can be said to constitute either a proximate or a contributing cause of this accident.
The defendants, nevertheless, contend that plaintiffs herein are guilty of contributory negligence and are, thus, barred from recovery. The basis of this plea is the alleged failure of plaintiffs to keep a proper lookout or to warn Bahcall of impending danger, or to protest the manner in which he was operating his vehicle, and in riding with him at a time and under conditions when it was unsafe to do so, as well as engaging him in a conversation diverting his attention from his driving. In addition, for identical reasons, defendants further contend that plaintiffs assumed the risk involved in riding with Bahcall. Plaintiffs, however, contest the applicability of the doctrine of assumption of risk in the absence of a special plea raising that defense. From our appreciation of the merits of the contention, it is deemed unnecessary to resolve the legal question involved.
With reference to the diversion of Bahcall's attention to property which he had purchased in the vicinity of the scene of the accident, it may be pointed out that the property is located approximately 40 feet to the right of the location where the Fortner car was parked. To see this property, it was not necessary for the driver to look other than practically straight ahead. Obviously, Bahcall was not keeping or maintaining a proper lookout. Nevertheless, the proof fails to establish that his diversion of attention was due to the conversation engaged in with his guests. No unusual facts or circumstances are indicated in connection with the conversation. We, therefore, cannot, as a matter of law, hold that a motorist who engages his guests in conversation, or vice versa, is, ipso facto, negligent or that the guest is contributorily negligent.
Nor can it be assumed, in retrospect, that, whatever inattention of which the driver was guilty, plaintiffs are bound thereby, in the absence of facts or circumstances which would put a reasonably prudent person on notice or guard. No such showing has been made.
In our review of the record, we find no basis to conclude that plaintiffs acquiesced in Bahcall's excessive speed. Bahcall slowed his speed to a virtual stop, if not a complete stop, at the intersection of Forsythe Avenue *415 and Oliver Road, approximately 3/10 of a mile from the scene of the accident. The car had traveled U. S. Highway 80, Sterlington Road, and Forsythe Avenue to Oliver Road without mishap or cause for apprehension or alarm. All the evidence adduced as to speed relates to the 3/10 mile of travel immediately prior to the accident. To travel that distance from "stop" to 60 m. p. h. would consume only a matter of seconds. Plaintiffs who were rear-seat passengers were afforded little opportunity, if any at all, to realize the speed at which they were traveling and to make a "back-seat suggestion" or to protest, even had they realized the speed at which they were traveling, a fact which they both denied.
It has long been recognized that passengers may rely on the driver's using ordinary care. Ponder v. Ponder et al., La. App.2d Cir., 1934, 157 So. 627.
Also, a back-seat guest "* * * is held to a less degree of care than one sitting on the front seat * * *." David v. Joseph et al., La.App.2d Cir., 1935, 164 So. 467, 469.
Furthermore, where a host suddenly accelerates his speed and a danger arises before the passenger has a chance to protest, the guest is not guilty of contributory negligence. For instance, it was stated in Morgan v. Lanz et al., La.App. 1st Cir., 1940, 195 So. 128, 131,
"* * * the accident happened so soon after they had entered the car that they had no time to apprehend the danger and protest at the rate of speed he had already gained when the accident happened."
Nor does the record establish any basis for sustaining the defense on the ground that the driver's attention was diverted from his driving by his conversation with his guests. There is no showing that plaintiffs knew or realized that the driver's attention had been so diverted.
Nor does the proof establish that Bahcall's driving ability was affected or impaired by the liquor consumed during the course of the evening. The officers who investigated the accident testified that Bahcall's ability to operate a motor vehicle was not so impaired. No one testified to the contrary. The manner of his driving preceding the accident and the fact of the conversation relating to property recently purchased in the vicinity belie any contention that Bahcall's ability as a driver was affected or impaired by his consumption of alcoholic liquors. The principle is established in our jurisprudence that the mere showing that one has imbibed alcoholic drinks immediately before driving an automobile is not to be construed as evidence, per se, that he is guilty of negligence, should he be involved in an accident. White v. State Farm Mut. Auto Ins. Co. et al., 222 La. 994, 64 So. 2d 245, 42 A.L.R.2d 338; Garcia et al. v. Anchor Casualty Company et al., La.App. 1st Cir., 1962, 148 So.2d 371 (writs denied); Warner v. Home Indemnity Company, La. App. Orleans, 1960, 123 So.2d 518 (writs denied); Elba v. Thomas et al., La.App. Orleans, 1952, 59 So.2d 732, 735-736.
For instance, it was observed in the Elba case:
"This court does not hold as a matter of law that one who has had a drink or two just before driving an automobile must necessarily be guilty of negligence if he should have an accident. Nor does this Court attempt to hold that it takes one, two, three or more drinks to render a person incapable of safely driving an automobile, as liquor has more or less effect upon individuals according to various conditions, such as age, sex, physical condition and its accustomed use."
The evidence is notably void of any showing of any of the usual characteristics of drunkenness or intoxication on the part of the driver. There is no proof that the automobile zigzagged from one side of the road to the other, or that the driver was *416 driving erratically, or that he was giddy or that he staggered. Had the investigating officers observed any indication of plaintiff's inability to drive, due to intoxication, they would have, as they testified, instituted charges.
Excessive speed and failure to keep a proper lookout are not confined to those who drive while under the influence of intoxicating liquors. Although there is, of course, a possibility that Bahcall was under the influence of alcoholic beverages, proof only of such possibility does not discharge defendants' burden of proof to establish to a certainty, and by a preponderance of the evidence, that he was under such influence. Warner v. Home Indemnity Company, supra.
The defendants, in pleading the doctrine of the assumption of risk as under pleas of contributory negligence, carry the burden of proof to establish that plaintiffs knew, or should have known, that Bahcall was unfit to drive the automobile in which they were passengers. Proof only to the extent of speculation, conjecture, mere possibility, and even unsupported probability, are not sufficient to sustain the burden of proof.
The conclusion is inescapable that defendants have not established, to that degree of legal certainty as required by law and by a preponderance of the evidence, that either Bahcall's ability as a driver was impaired by the use of alcohol or that plaintiffs, his guests, knew, or should have known, that fact. Hence, there is no showing of the existence of impending dangers which warranted or required plaintiffs to protest.
On the question of quantum, we observe from the record that plaintiff, Mrs. Bodan, was thrown about in the car and, because of which, she sustained a blow to her right shoulder. This injury produced temporary disability in the raising of her arm. She was driven home from the scene of the accident. Within two or three days thereafter, difficulty developed in her backsevere pains were experienced in her lower back and legs. Treatment by the family physician, Dr. Sol I. Courtman, was sought. Medication and heat treatment were applied.
Plaintiff, although continuing under treatment of her family physician, was referred to Dr. Roy H. Ledbetter, Jr., an orthopedist, who diagnosed plaintiff's principal injury as a strain of the sacroiliac joint. The wearing of a special lumbosacral support was prescribed. Notwithstanding the wearing of this support, there was no relief from pain and suffering characterized by plaintiff as extremely severe and excruciating. With the movement of her body, pain would increase and, at times, plaintiff was unable to bear her weight on her feet. Efforts to secure relief were unsuccessful. Plaintiff was finally, about a month after the accident, admitted to a hospital. During the course of eight days' hospitalization, she was placed in traction. After discharge from the hospital, plaintiff was confined to bed for two weeks. Pain and suffering, however, persisted until during April, 1962, thereafter recurring and becoming intermittent, especially following exercise or other activities. Such a recurrence was noted during the Thanksgiving holidays of 1962. In the meantime, the lumbosacral strain became chronic in nature, which, together with nerve-root irritation on the right side, produced acute exacerbation. This nerve-root irritation at the level of the fifth lumbar vertebra was manifested as sciatica extending the length of the sciatic nerve.
With further reference to plaintiff's injuries, the orthopedist testified:
"A lumbosacral strain which is bad enough towhich is severe enough to cause sciatica has quite a bit of congestion and irritation at the joint and I would say that the painwhereas it is notI wouldn't consider it excruciating and unrelenting, I would say that it is of considerable severity and it is quite confining. It is usually manifest by increased discomfort on any physical motion such as getting in and out of bed *417 can aggravate the pain. In this case I feel this lady did have that degree of discomfort during the time that she was in the hospital and probably for the few days immediately prior to her admission to the hospital, * * *."
Dr. Ledbetter last saw Mrs. Bodan on December 26, 1962. On this examination he again found tenderness at the lumbosacral joint and to the right of the midline thereof, and concluded that:
"Whereas Mrs. Bodan's symptoms had been controlled as long as she was on a relatively inactive program, that, when she resumed a more strenuous physical program, she had a recurrence of symptoms and he felt this was due to the fact that she had some residual weakness in her lumbosacral joint and its associated musculature. * * * I suggested that she resume the taking of her postural exercises in order to prevent such a recurrence."
The determination of a correct award for personal injuries is generally attendant with considerable difficulty. This case is no exception. No precise method has been found whereby the correctness of such a determination may be made with mathematical precision. No two cases are exactly alike. The awards in other cases where the facts and circumstances vary may be persuasive but they are not controlling. They may be of benefit, however, as a matter of comparison so that awards possess some degree of uniformity.
In this case, plaintiffs suggest, for Mrs. Bodan, that the award should be $5,000.00, whereas the defendants suggest $1,500.00. From our review of the entire record, particularly the medical testimony, we have concluded that $3,000.00 is adequate to compensate Mrs. Bodan for her injuries.
With reference to Mr. Bodan's injuries, the record discloses that he sustained a blow on the nose, causing profuse bleeding, a black eye, and a blow to his shoulder. From injuries to the eye he experienced some pain for two or three days. The eye remained black for approximately two weeks. Some pains, aches, and discomfort were experienced in his shoulder for several weeks. His face, for a short time, was swollen. In our opinion, $500.00 would adequately compensate him for his pain, shock, and suffering.
Plaintiff Alvin L. Bodan claims special damages in the amount of $934.95 in the nature of medical expenses for the treatment of himself and his wife, for future medical expenses, for extra maid help, and additional drugs and medicines. No testimony was adduced as to the need for future medical treatment of Mrs. Bodan. The claims, predicated on extra help and drugs and medicine, are not established with reasonable certainty. The amounts were only estimates.
The medical and hospital expenses actually incurred were shown to have been paid by the defendant American Employers' Insurance Company, other than an item in the sum of $25.00. The medical payments were made under the medical-payment provisions of defendant's policy. Where such payments have been made, recovery therefor under the tort features of the insurer's policy may not be recovered. Gunter et al. v. Lord et al., 242 La. 943, 140 So.2d 11, 16.
Accordingly, for the reasons assigned, the judgment appealed should be, and it is hereby, annulled, avoided, reversed, and set aside; and
It is now Ordered, Adjudged, and Decreed there be judgment herein in favor of plaintiff Mrs. Eva Lee Gilbert Bodan for the full sum of $3,000.00 and in favor of Alvin L. Bodan in the sum of $525.00, against the defendant American Employers' Insurance Company, with 5% per annum interest on both of said sums from judicial demand until paid, and for all costs, including the cost of this appeal.
Reversed and rendered.