AYRES, Judge.
This is an action in tort wherein plaintiffs, husband and wife, seek to recover damages sustained in a motor vehicle collision on February 20, 1970, at the T-intersection of Riviera Street with North Lake-shore Drive in Caddo Parish. Involved in the accident were plaintiffs’ Ford Mustang and an International pickup truck owned by Piggly Wiggly Operators Warehouse, Inc., and driven by its employee Lester T. Frazier. Made defendant was Aetna Casualty & Surety Company, public liability insurer of Piggly Wiggly.
Plaintiff Mrs. Rossiter seeks to recover damages for personal injuries allegedly sustained in the accident; plaintiff Larry Rossiter seeks to recover damages sustained to the family automobile to the extent of a deductible from coverage prescribed in a collision insurance policy of Insured Lloyds Insurance Company. He also seeks the recovery of hospital and medical expenses incurred and to be incurred in the treatment of his wife’s injuries. Plaintiffs’ insurer intervened seeking reimbursement of the damages paid to plaintiffs under its policy as the insurer of plaintiffs’ vehicle. Defendant, as the workmen’s compensation insurance carrier of Piggly Wiggly, reconvened and sought to be reimbursed hospital and medical expenses incurred in the treatment of the injuries sustained by Frazier in the accident as well as compensation paid during the period of his disability.
The trial court concluded, after trial, that both Mrs. Rossiter and Frazier were guilty of negligence, and accordingly rejected not only plaintiffs’ demands but those of the defendant in reconvention as well as those of the intervenor. From the judgment ac *105 cordingly rendered and signed, plaintiffs and the intervenor appealed. Defendant, Aetna, answered plaintiffs’ appeal and prayed that it have judgment as originally sought.
North Lakeshore Drive at the scene of the accident is a 2-lane asphalt-surfaced roadway with a broken white line along its center. There is no yellow line or other marking in the vicinity of the accident indicating a no-passing zone. North Lake-shore Drive runs in a general north-and-south course. Riviera Street, also a 2-lane asphalt-surfaced passageway, approaches from the west and forms a T-intersection with North Lakeshore Drive. The latter is the favored street. Entrance to it from Riviera is governed by a stop sign erected about 20 feet from the intersection.
Mrs. Rossiter, driver of the Mustang, was proceeding easterly on Riviera as she approached and entered the intersection at North Lakeshore Drive. Approaching the intersection from the south and, therefore, proceeding north on North Lakeshore Drive were two trucks. The first, or lead truck, was an ice delivery truck operated by Isham Burks, traveling approximately 45 m. p. h., followed by the International pickup driven by Frazier, an automobile mechanic of Piggly Wiggly who was returning from a service call to another of his employer’s trucks. The Piggly Wiggly warehouse, within sight of the scene, was the destination of both trucks.
Before reaching the intersection, Frazier began a passing movement. Emerging from behind the ice truck, he entered the left, or southbound, traffic lane of the roadway and increased his speed to 55 or 60 m. p. h. This was the maximum allowable speed limit. When Frazier, alongside the front of the ice truck, began a return movement to his proper northbound lane, the Mustang operated by Mrs. Rossiter was driven from Riviera into the intersection angling south in the southbound traffic lane of North Lakeshore Drive. She thus indicated her intention to proceed south on that roadway. A head-on collision resulted. The left front of the Piggly Wiggly truck and the left front of the Mustang were the points of contact. The Piggly Wiggly truck angled to the right, crossed the northbound traffic lane in front of the ice truck and came to rest in the east roadside ditch. The Mustang came to rest with its rear on the shoulder of Riviera and its front angled southeast in the southbound lane.
Negligence charged to Frazier, driver of the Piggly Wiggly truck, consisted of a failure to maintain a proper lookout or to keep his vehicle under control, in passing another vehicle at an intersection, in driving on the wrong side of the road, and in failing to yield the right of way to approaching traffic.
Charges of negligence directed to Mrs. Rossiter comprised (1) a failure to keep a proper lookout and to observe oncoming traffic on North Lakeshore Drive, and to stop and observe the stop sign at the intersection, as well as (2) a failure to ascertain that the southbound traffic lane of North Lakeshore Drive was free of oncoming traffic before she attempted a right turn into the favored roadway, and a failure to yield the right of way to oncoming traffic thereon.
Taking them in reverse order, attention will be first given to the charges of negligence directed to Mrs. Rossiter. These charges are based primarily upon her alleged violation of the provisions of the Highway Regulatory Act as contained in LSA-R.S. 32:123, the pertinent provisions of which read:
“A. Preferential right of way at an intersection may be indicated by stop signs or yield signs.
“B. Except when directed to proceed by a police officer or traffic-control signal, every driver and operator of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the cross walk on the near side at a clearly marked stop line, but if none, then at the point nearest the intersecting *106 roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, the driver shall yield the right of way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard.” (Emphasis supplied.)
The jurisprudence of this State is in accord with and supports the above-stated statutory provisions. Thus it has been held on many occasions that a motorist who approaches a favored thoroughfare on an inferior street on which the traffic is controlled by a stop sign must not only stop in compliance with the stop sign before entering the right-of-way thoroughfare but must remain stopped until he has ascertained he can proceed with safety. He must further yield the right of way to drivers of oncoming vehicles approaching so closely on the favored roadway as to constitute a peril or hazard to the motorist on the inferior street who plans to enter the favored roadway. Henderson v. Central Mutual Insurance Company, 238 La. 250, 115 So.2d 339 (1959); Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849 (1948) ; Ballaron v. Roth, 221 So.2d 297 (La.App., 4th Cir. 1969); Aucoin v. Fidelity General Insurance Company, 219 So.2d 532 (La.App., 3d Cir. 1969 — writ refused); Reynolds v. Villarrubia Taxicab Rental Company, 218 So.2d 66 (La.App., 4th Cir. 1969); Phoenix of Hartford Insurance Co. v. Llort, 219 So.2d 789 (La.App., 1st Cir. 1968); Doucette v. Primeaux, 180 So.2d 866 (La. App., 3d Cir. 1965 — writ refused); Simmons v. Zeno, 168 So.2d 357 (La.App., 3d Cir. 1964).
The testimony is conflicting as to whether Mrs. Rossiter stopped in compliance with the stop sign before driving into the intersection of the favored street. She testified that she stopped. Frazier and Burks, drivers of the two trucks, testified she did not stop, but proceeded, without halting or yielding the right of way, into the intersection. Nevertheless, the court concluded that Mrs. Rossiter did stop. Mrs. Rossiter, however, testified that before beginning her right turn into North Lakeshore Drive she looked in both directions on North Lake-shore Drive and, upon looking to her right, saw the approaching trucks at an undetermined distance away, which was about the time she proceeded from the stop sign toward the intersection. She also admitted having seen the rear truck come from behind the ice truck into the passing lane. The trial court found that:
“At almost the same instant that the Rossiter vehicle began its maneuver of traversing the twenty feet, the driver of the warehouse truck proceeded to begin his passing maneuver which required him to accelerate his speed to approximately sixty miles per hour. There is no indication in the record to show that the driver of the warehouse truck exceeded his speed limit. * *
and concluded that:
“The warehouse truck had cleared the ice truck and was pulling back into his lane of traffic when the left front portion of the truck collided with the left front portion of the Mustang.”
From these facts the court determined:
“ * * * that the driver of the Rossiter vehicle could have observed a passing maneuver on behalf of the warehouse truck, had she been keeping a reasonable lookout and observance of the traffic situation, in sufficient time to have avoided the impending collision. It is the Court's opinion that the negligence of the plaintiff, Mrs. Rossiter, is such as to bar her recovery for injuries which she sustained in the accident.” (Emphasis supplied.)
A driver who merely stops in obedience to a traffic sign discharges only part of the duty required of him. He is required to see, or is charged with seeing, approaching vehicles which he can see, or should have seen, by the exercise of reasonable care and *107 precaution, on the favored street, and to refrain from driving into an intersection until he has made certain that it is safe to do so. His duty is not only to stop at an intersection but also to determine if the way is clear and to yield to oncoming vehicular traffic on the favored roadway before entering thereon when it is unsafe to do so. Failure of Mrs. Rossiter in these respects was found by the trial court. Our own appreciation of the record leads us not only to the conclusion that his Honor’s findings on this issue were without manifest error but were supported by a great preponderance of the evidence.
Next for consideration are the charges of negligence directed against Frazier, driver of the Piggly Wiggly truck. The serious question before us with respect to his conduct is his alleged violation of LSA-R.S. 32:76, which, so far as pertinent, reads as follows:
“A. No vehicle shall at any time be driven to the left side of the highway under the following conditions:
;fc i}c s}: ‡ %
“(2) when approaching within one hundred feet of or traversing any intersection or railroad grade crossing;
sfc ‡ ‡ »
We are in full accord with the now well-established rule that the violation of the aforesaid statutory prohibition against passing at an intersection constituted negligence per se. We are, however, unaware of any rule to the effect that such violation ipso facto renders an offending driver liable for injuries resulting therefrom to other parties regardless of the attendant facts and circumstances. To the contrary, the rule is well established in our jurisprudence that such negligence, or any negligence, is not actionable unless it constitutes a proximate cause of the injury upon which the action is based. Home Gas & Fuel Co. v. Mississippi Tank Co., 246 La. 625, 166 So.2d 252 (1964); Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Hoover v. Wagner, 189 So.2d 20 (La.App., 1st Cir. 1966 — writ refused) ; Bodan v. American Employers’ Insurance Company, 160 So.2d 410 (La. App., 2d Cir. 1964).
A proximate cause is generally defined as any cause which, in natural and continuous sequence, unbroken by any efficient, intervening cause, produces the result complained of and without which the result would not have occurred, and from which it ought to have been foreseen or reasonably anticipated by a person of ordinary prudence in the exercise of ordinary care that the injury complained of, or some similar injury, would result therefrom as a natural and probable sequence. Sumrall v. Aetna Casualty and Surety Company, 124 So.2d 168, 176 (La.App., 2d Cir. 1960-cert. denied).
Thus, wrongful conduct, to constitute actionable negligence, must be a cause-in-fact of harm to another and constitute a substantial factor in bringing about that harm. Dixie Drive It Yourself Sys. v. American Beverage Co., supra; Ardoin v. Williams, 108 So.2d 817 (La.App., 2d Cir. 1959); Harvey v. Great American Indemnity Company, 110 So.2d 595 (La.App., 2d Cir. 1958).
A determination of the question of proximate cause in a tort action is dependent largely upon the facts and circumstances of each individual case. The trial court found from the facts that Frazier’s act of passing the forward truck within 100 feet of the intersection, though negligence per se, was not, for that reason alone, actionable negligence. With that conclusion we are in accord. Frazier began his passing movement, as heretofore noted, at some distance south of the intersection. He came from behind the forward truck, entered the passing lane, and increased his speed to approximately 60 m. p. h. so as to effectuate his passing movement. At the beginning of his passing maneuver, considering the testimony as most favorable to plaintiffs, Mrs. Rossiter stopped her car at or near the stop sign. She saw the trucks approach *108 ing one behind the other and then saw the beginning of the passing maneuver. Although the precise locations and the distances of the trucks from the intersection at the time the passing movement began were not definitely established, the record does establish that the passing movement was in a manner completed before Frazier reached the intersection, for, as heretofore noted, after the collision Frazier’s truck pursued a northeast course across the northbound traffic lane, passed in front of the ice truck, and came to rest in the right roadside ditch a short distance beyond the intersection.
A rule well established in the jurisprudence is that a motorist on a right-of-way street has the right to assume that any driver approaching on a less-favored street will observe the law and stop for the stop sign and yield the right of way. Henderson v. Central Mutual Insurance Company, supra; Koob v. Cooperative Cab Co., supra; Aucoin v. Fidelity General Insurance Company, supra; Landry v. State Farm Mutual Automobile Ins. Co., 215 So.2d 226 (La. App., 3d Cir. 1968); Richard v. Southern Farm Bureau Casualty Ins. Co., 212 So.2d 471 (La.App., 3d Cir. 1968); Guidry v. Grain Dealers Mutual Insurance Company, 193 So.2d 873 (La.App., 3d Cir. 1967).
Appropriate here is the observation made in Koob v. Cooperative Cab Co., supra (35 So.2d 851), and repeated in Henderson v. Central Mutual Insurance Company, supra (115 So.2d 341), wherein it was stated:
“The law in this state is well settled that a motorist who is proceeding on a right-of-way street, upon approaching an intersection where traffic is required under a city ordinance, and is warned by stop signs, to come to a complete stop before entering the intersection, should not be held to the same degree of care and vigilance as if no ordinance existed or stop signs were erected. The danger at such an intersection is less than that at a corner where no stop signs have been erected, and therefore less care is required of the driver on a favored street. The motorist on the right-of-way street, with knowledge of the location of such a stop sign, has a right to assume that any driver approaching the intersection from the less favored street will observe the law and bring his car to a stop before entering the intersection, and such motorist can indulge in this assumption until he sees, or should see, that the other car has not observed, or is not going to observe, the law.”
The trial court observed that, except for his failure to signal his intention to pass the ice truck, the driver of the Pig-gly Wiggly International pickup would have been exonerated from any liability with respect to the cause of the accident.
Particular reference is made to the driver’s failure to sound his horn, activate his blinker lights, or to give a hand signal. If it should be conceded that the situation warranted the applications of these signals, a requirement which we doubt and seriously question, they could not have had any effect under the facts shown to exist here. The purpose of these signals is to give notice or warnings of circumstances to others who may not be aware thereof. They serve no purpose where the person or motorist thus sought to be warned, who by prior notice or observation, already has knowledge of such fact or circumstances. As already noted, Mrs. Rossiter saw the approaching trucks and the passing movement at such a distance that the passing maneuver was in a manner completed when the passing vehicle reached the intersection. No warning of whatever nature, whether by horn, light, or extended arm, was necessary or could have served better to inform her of the facts and circumstances of which by her own observation she was fully aware.
Plaintiff-appellant relies upon the pronouncements of our brethren of the Third Circuit in Normand v. American Home Assurance Company, 171 So.2d 804 (1965— writ refused). There it was held that a motorist passing a vehicle at an intersection who collided head-on with such other vehicle, which had turned right into the *109 highway at the intersection, was guilty of negligence proximately causing the accident and liable for injuries received by guest passengers in both colliding vehicles. The holding there is consistent with the rule that negligence, to be actionable, must constitute a proximate cause of the accident, for the opinion states:
“The above cited statutory provision [LSA-R.S. 32:76] is a safety measure, designed to protect life and property on the highways. The violation of its provisions by a motorist is negligence per se, and this negligence is actionable if it constitutes a proximate cause of the collision.” (Emphasis supplied.) 171 So. 2d 804, 808.
Although the opinion does not discuss in detail wherein the acts of the motorist in the cited case constituted a proximate cause of the collision, the court recognized the general rule that the violation of a statutory provision, though negligence per se, is not actionable unless it constitutes a proximate cause of the accident. We do not perceive that the court intended to deviate from the jurisprudential rule that negligence is not actionable unless it constitutes a proximate cause of the injury.
Frazier, an employee of Piggly Wiggly for there years, had, during that time, frequently traveled the favored thoroughfare. He was familiar with the intersection and, under the facts disclosed by this record, had a right to assume that any driver approaching the intersection from the less-favored street would observe the law and bring his vehicle to a stop before entering the intersection. Moreover, he had a right to indulge in that assumption until he saw, or should have seen, that the driver of the other car was not observing, or was not going to observe, the law. Henderson v. Central Mutual Insurance Company, supra; Koob v. Cooperative Cab Co., supra.
There is no showing that, after Frazier saw, or should or could have seen, the Rossiter car coming into the intersection, he had either time, distance, or opportunity to take effective evasive action to avoid the collision. The evidence preponderates to the contrary. We further conclude that Mrs. Rossiter’s driving into the intersection in disregard of the oncoming trucks was the sole and proximate cause of the accident.
It was stipulated that the defendant, as workmen’s compensation insurer of Piggly Wiggly Operators Warehouse, Inc., expended $368.01 for medical expenses in the treatment of Lester T. Frazier, Piggly Wiggly’s employee, for injuries sustained in the accident, and paid him the additional sum of $65.34 in compensation during the period of his disability. Defendant is, therefore, entitled to recover, in reconvention, these items aggregating $433.35.
For the reasons assigned, 'the judgment rejecting plaintiffs’ demands, as well as those of Insured Lloyds Insurance Company, is affirmed, but reversed as to the rejection of defendant’s demands in recon-vention ; and
Accordingly, there is judgment in favor of Aetna Casualty & Surety Company, defendant and plaintiff in reconvention, against the plaintiffs, Larry Rossiter and Martha J. Rossiter, in solido, for the full sum of $433.35, with legal interest thereon from judicial demand until paid, and for all costs.
Affirmed in part; reversed in part and rendered.