CHEHARDY, Judge.
Plaintiffs Georgia Coburn Williams, John David Williams, Jr., and Pamela Jean Williams jointly appeal a district court decision in favor of defendant Louisiana Department of Transportation and Development, originally named the Louisiana Department of Highways, and against all plaintiffs, dismissing their suit as to that defendant at their cost.
John D. Williams, Sr., the husband of Georgia Williams, and the father of John and Pamela Williams, was involved in a two-car collision with defendant William H. Trawick on June 7, 1973 on the River Road in Jefferson Parish. As a result of injuries received, Mr. Williams died approximately 11 days after the accident.
On October 24, 1973, plaintiffs filed suit against Trawick, Criterion Insurance Company (Criterion), Electronic Services, Inc. (Electronic), Early American Insurance Company (Early American), and Maryland Casualty Company (Maryland), claiming they were all jointly, severally and in solido indebted to petitioners for damages due to the death of Mr. Williams. On June 4, 1974, Trawick, Electronic, and Early American filed a third party demand against the Department of Highways, State of Louisiana, claiming that the accident was the result of that defendant’s negligence and asking for indemnity to those third party plaintiffs for any damages for which they might be cast.
On June 3, 1974, Maryland also filed a third party demand against the Department of Highways, claiming it was liable for any damages for which Maryland may be cast; however, on September 16, 1976, Maryland was granted a summary judgment dismissing it from the plaintiffs’ suit.
Bob Shurley, Jr., Jerry Shurley and Mrs. Linda Shurley, wife of Auguste Frey, were allowed by the court to withdraw as parties plaintiff on April 4, 1978.
Criterion was granted its motion for summary judgment on June 9, 1978, dismissing all claims against it.
On July 12, 1978, plaintiffs filed their second amended petition additionally alleging that the sole and proximate cause of the accident was the joint, several and in solido negligence of Trawick and the Department of Highways.
Defendants and third party plaintiffs Trawick, Electronic, Early American, and subsequently-joined defendants Dixie Auto Insurance Company and American Southern Insurance Company were dismissed *911 from the suit, as were their demands against the Department of Highways, on the ground that the plaintiffs’ demands against them had been fully compromised and settled.
The record establishes that the two-way, undivided highway on which the accident occurred had a wet surface at the time of the collision. It was also the opinion of the investigating officers that Trawick’s vehicle crossed the center line, due to slick roadway conditions, and struck Mr. Williams’ automobile, which was knocked approximately 15 feet from the point of impact and landed off the roadway in a ditch.
Jerald Mennerjahn, one of the investigating officers of the accident, said there was no way to establish the speed of either of the two vehicles since there were no skid marks.
Dwayne Evans, a consulting traffic engineer who was called by the plaintiffs as an expert witness, testified he had examined the curve on which the accident took place and reported there were advisory speed signs at the approach to the curve of 20 miles an hour, although the posted speed limit reflected in the accident report was 25 miles an hour.
Evans also stated he ran what is commonly known as a “Ball Bank Test” at the site, which is a means of determining the safe speed for a curve. He said that, traveling at 25 miles an hour, he had trouble staying in his lane, and a maximum safe speed would have been 15 miles an hour. He also said he would not have recommended the negative super elevation, or sloping of the curve, at the time the road was constructed in 1952, due to the fact that it tends to force vehicles off the roadway.
Harry Schaffer, accepted as an expert in design engineering, explained the slant in the roadway at the accident site was not an uncommon design and had as its purpose water drainage. He was also of the opinion that 20 miles an hour was a reasonable speed at which to negotiate the subject curve, although he had not run a Ball Bank Test.
In his deposition, Trawick testified that at the time of impact his vehicle was traveling at 15 miles an hour. Although at trial counsel for plaintiffs asked counsel for the Department of Highways to enter into a stipulation that if Evans were present he would testify that the speed of both vehicles was at least 20 miles an hour, the record reveals the defendant would have objected to such testimony.
In giving his reasons for judgment from the bench, the district court judge concluded in part:
“Mr. Evans testified that it would not be safe to attempt to negotiate that curve at twenty miles an hour because of his ball bank test indicator, which showed that it would not be safe to enter that curve, but he does say that at fifteen miles an hour, the negative elevation and all the other things he spoke about would not have an effect at that point. If you come into the curve and make the curve at fifteen miles an hour, it is my understanding from what his testimony is, I have to believe that at the time that Mr. Trawick entered into that curve, that he did slow down and that he entered that curve at approximately fifteen miles an hour, and based upon the expert, Mr. Evans, he said it would be safe to negotiate that curve at that speed.
“I can only conclude, therefore, that insofar as the design of the highway at the time Mr. Trawick entered it at fifteen miles an hour, whatever defective design there may have been, did not contribute in any way to the cause of this accident because he had entered into that curve, based upon Mr. Evans’ expertise of fifteen miles per hour, where he entered into it, he entered at a safe rate of speed, since at fifteen miles an hour an accident did occur, I have to conclude that the accident was caused by the negligence of the drivers, and not by the negligence or by the design of that highway.”
A trial court’s conclusion of fact and evaluation of the credibility of witnesses must be given great weight by an appellate court *912 and should not be disturbed in the absence of manifest error.
Moreover, regarding the issue of proximate cause, which must be considered in the analysis of any tort case, the court said in Rossiter v. Aetna Casualty & Surety Company, 255 So.2d 103 (La.App. 2d Cir. 1971), at page 107:
“ * * * To the contrary, the rule is well established in our jurisprudence that such negligence, or any negligence, is not actionable unless it constitutes a proximate cause of the injury upon which the action is based. Home Gas & Fuel Co. v. Mississippi Tank Co., 246 La. 625, 166 So.2d 252 (1964); Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Hoover v. Wagner, 189 So.2d 20 (La.App., 1st Cir. 1966 — writ refused); Bodan v. American Employers’ Insurance Company, 160 So.2d 410 (La.App., 2d Cir. 1964).
“A proximate cause is generally defined as any cause which, in natural and continuous sequence, unbroken by any efficient, intervening cause, produces the result complained of and without which the result would not have occurred, and from which it ought to have been foreseen or reasonably anticipated by a person of ordinary prudence in the exercise of ordinary care that the injury complained of, or some similar injury, would result therefrom as a natural and probable sequence. Sumrall v. Aetna Casualty and Surety Company, 124 So.2d 168, 176 (La.App., 2d Cir. 1960 — cert. denied).
“Thus, wrongful conduct, to constitute actionable negligence, must be a cause-in-fact of harm to another and constitute a substantial factor in bringing about that harm. Dixie Drive It Yourself Sys. v. American Beverage Co., supra; Ardoin v. Williams, 108 So.2d 817 (La.App., 2d Cir. 1959); Harvey v. Great American Indemnity Company, 110 So.2d 595 (La.App., 2d Cir. 1958).”
We agree with the district court that although the Department of Highways may have been negligent in the design of the roadway, as well as in the posting of an excessively high speed limit at the curve where the accident took place, such actions were not, in fact, a cause of the collision in this case. Neither can we find a basis for disturbing the district court’s acceptance of Trawick’s testimony that he was only traveling 15 miles an hour at the time of impact, since no evidence was produced by the plaintiffs in contradiction.
In view of this court’s finding, we need not address ourselves to the question of whether the plaintiffs’ action against the Louisiana Department of Transportation and Development had prescribed prior to the joining of that defendant in the suit.
For the reasons assigned, the trial court’s decision is affirmed in all respects.

AFFIRMED.